UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | No. 5:17–CR–380–DAE (2) |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| VERNON C. FARTHING, III, | § | |
| | § | |
| Defendant. | § | |
| _____ | § | |

## ORDER DENYING MOTION TO DISMISS INDICTMENT

Before the Court is a Motion to Dismiss Indictment filed by

Defendant Vernon C. Farthing, III ("Defendant" or "Farthing").  (Dkt. # 52.)  After

carefully considering the memoranda filed in support of and in opposition to the

motion, the Court—for the reasons that follow—**DENIES** Defendant's Motion to

Dismiss Indictment (Dkt. # 52).

## BACKGROUND

According to the Indictment, Farthing was the president of a company

that specialized in providing medical services to inmates.  ("Indict.," Dkt. # 3 ¶¶ 3,

5.)  On August 10, 2005, the Indictment alleges that Farthing, on behalf of his

company, submitted a proposal to provide medical services to Reeves County

Detention Center R-3 ("the Facility").  (Id.)  The proposal was made contingent on

Reeves County[1] being awarded a Federal Bureau of Prisons ("BOP") contract to house federal inmates in the Facility.  (Id. ¶ 5.)  After Reeves County was awarded the BOP contract, the Reeves County Commissioners Court, which at the time was presided over by County Judge Jimmy Galindo ("Galindo"), voted on September 13, 2006, to award Farthing's company the contract to provide services at the Facility ("the R-3 Contract").  (Id. ¶¶ 7–8.)  The R-3 Contract provided that Reeves County would pay Farthing's company a specified fee per inmate per day for healthcare services.  (Id. ¶ 8.)

The Indictment further alleges that Farthing's co-defendant, Carlos Uresti ("Uresti"), a Texas State Senator,[2] engaged in a conspiracy with Farthing and Galindo to corruptly influence or reward Galindo in connection with the R-3 Contract being awarded to Farthing's company.  (Id. ¶ 10.)  The purported scheme involved Galindo "accepting payments, promises of future payments, and other things of value from Farthing, through Farthing's company."  (Indict. ¶ 12(a).)  In exchange for these payments and promises of future payments, Galindo presided

---

[1] Reeves County is a county in Texas located in the Western District of Texas and includes the town of Pecos.  (Indict. ¶ 1.)  Reeves County is governed by the Reeves County Commissioners Court, presided over by the Reeves County Judge.  (Id.)

[2] The Indictment states that Uresti was and is the Texas State Senator for Senate District 19, which includes Reeves County.  (Id. ¶ 2.)  Uresti was elected on November 7, 2006; however, the Court takes judicial notice that he resigned in June 2018.

over the vote that awarded the R-3 Contract to Farthing's company and helped the company secure the contract on favorable terms.  (Id. ¶ 12(b).)

The Indictment further alleges that "Farthing, through Farthing's company, agreed to hire Uresti as a 'consultant' and pay [him] approximately $10,000 a month."  (Id. ¶¶ 12(c), 13(e).)  As a "consultant," the Indictment alleges that Uresti acted as a conduit for payments from Farthing and Farthing's company to Galindo, and then paid approximately half of the money he received from Farthing and Farthing's company to Galindo.  (Id. ¶ 12(d).)  Uresti allegedly used a company called Turning Point Strategies, LLC ("TPS") and his law firm's accounts to pay Galindo a share of the payments he received from Farthing and Farthing's company.  (Id. ¶ 12(f).)  The alleged purpose of this arrangement was to conceal the origin, nature, ownership, and control of the payments to Galindo from Farthing and Farthing's company, and to hide the conspiracy from taxpayers, citizens, and the Reeves County commissioners.  (Id. ¶¶ 12(e)–(f).)

The Indictment alleges that—about one month before Galindo presided over the vote to award the R-3 Contract—Galindo, Uresti, and Farthing met on August 7, 2006, to discuss the contract and the arrangement to pay Uresti as a consultant.  (Indict. ¶ 13(a).)  On September 13, 2006, after the R-3 Contract was awarded to Farthing's company and signed by Galindo in his official capacity as Reeves County Judge, Farthing allegedly sent a letter to Uresti on September 20,

2006, agreeing to pay Uresti $10,000 a month for "marketing services."  (Id. ¶ 13(d).)  Farthing also allegedly sent a check to Uresti on September 20, 2006, for $10,000 as the initial payment to Uresti and Galindo.  (Id. ¶ 13(e).)

        For a period of approximately ten years, from September 20, 2006, until September 30, 2016, Farthing's company, and its successor companies, allegedly paid Uresti monies pursuant to the agreement among Uresti, Farthing, and Galindo.  (Id. ¶ 13(g).)  Further, from January 1, 2007, until September 30, 2016, Uresti allegedly paid Galindo approximately one-half of the payments he received from Farthing's company and its successor companies.  (Id. ¶ 13(h).)  The Indictment alleges several specific payments from Farthing's company or successor companies to Uresti, a portion of which Uresti subsequently transferred to Galindo via wire transfers.[3]  (Id. ¶¶ 13(i)–(q).)

        On May 16, 2017, a federal grand jury returned a two-count Indictment charging Uresti and Farthing with: (1) Conspiracy to Commit Bribery, in violation of 18 U.S.C. §§ 371 and 666(a)(1)(B) ("Count 1"); and (2) Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h) ("Count 2"). (See generally Indict.)

---

[3] These three transactions are alleged to have occurred in February 2013, December 2013, and April 2014.  (Indict. ¶¶ 13(i)–(q).)

On February 23, 2018, Farthing filed the instant Motion to Dismiss Indictment.  (Dkt. # 52.)  The Government timely filed a response in opposition on March 7, 2018.  (Dkt. # 55.)

## LEGAL STANDARD

"Courts address alleged defects in an indictment by assessing the sufficiency of the indictment."  United States v. Ayika, EP-11-CR-2126-DB, 2014 WL 12528355, at *3 (W.D. Tex. Sept. 15, 2014) (citing United States v. Contris, 592 F.2d 893, 896 (5th Cir. 1979)); see also Fed. R. Crim. P. 12(b)(3)(B)(v) (allowing defendants to file pretrial motions that allege, inter alia, "a defect in the indictment or information, including . . . failure to state an offense").  It is therefore well-established that, "[i]n order to fulfill the protections guaranteed under the Fifth and Sixth Amendments," Ayika, 2014 WL 12528355, at *3, "an indictment must set forth the offense with sufficient clarity and certainty to apprise the accused of the crime with which he is charged."  United States v. Kay, 359 F.3d 738, 742 (5th Cir. 2004); see also Russel v. United States, 369 U.S. 749, 765 (1962) ("An indictment not framed to apprise the defendant with reasonable certainty of the nature of the accusation against him is defective.")

The test for an indictment's sufficiency is not "whether the indictment could have been framed in a more satisfactory manner," but rather whether it conforms to minimal constitutional standards.  Kay, 359 F.3d at 742 (quoting

United States v. Ramirez, 233 F.3d 318, 323 (5th Cir. 2000)).  Thus, the sufficiency of an indictment is measured by two criteria: "(1) whether the indictment contains the elements of the offense charged and sufficiently apprises the defendant so that he will not be misled while preparing his defense; and (2) whether the defendant is protected against another prosecution for the same offense."  United States v. Bearden, 423 F.2d 805, 810 (5th Cir. 1970) (citing Russel, 369 U.S. at 763).  The Fifth Circuit has held that "ordinarily, the pleading of the allegations in terms of the statute is sufficient to fulfill this dual requirement."  United States v. Cadillac Overall Supply Co., 568 F.2d 1078, 1082 (5th Cir. 1978) (citing United States v. Lester, 541 F.2d 499 (5th Cir. 1976)).

"[A]n indictment is tested by practical rather than technical considerations," and generally the "validity of an indictment is to be determined by reading the indictment as a whole."  Ayika, 2014 WL 12528355, at *3 (internal quotations and citations omitted).  Finally, "a motion to dismiss an indictment for failure to state an offense challenges the sufficiency of the indictment itself, requiring the court to take the allegations of the indictment as true and to determine whether an offense has been stated."  United States v. Hogue, 132 F.3d 1087, 1089 (5th Cir. 1998) (citing Cadillac Overall Supply Co., 568 F.2d at 1082).

DISCUSSION

Farthing moves to dismiss the Indictment on the basis that: (1) it fails to allege an offense; (2) it subjects him to the risk of a constructive amendment at trial; (3) it alleges conduct which is barred by the statute of limitations; and (4) it deprives the defendant of his constitutional right to notice of the exact charges against him in violation of the Fifth and Sixth Amendments to the United States Constitution.  (Dkt. # 52.)  The Court addresses each of these arguments in turn.

I.    Count 1

Farthing first moves to dismiss Count 1 of the Indictment for failure to give fair notice of the charge against him.  (Dkt. # 52 at 2.)  With respect to this count which charges Farthing with conspiracy to commit bribery in violation of 18 U.S.C. § 371 ("Section 371") and 18 U.S.C. § 666(a)(1)(B) ("Section 666"), Farthing argues that the Indictment fails to allege a date, either certain or approximate, when the alleged agreement with Uresti to pay Galindo occurred. (Id. at 3.)  Farthing contends that the Indictment alleges that Galindo, Farthing, and Uresti discussed the upcoming R-3 Contract before the vote, after which Galindo voted and signed the Contract and then left public office, and it was only *after* this that Uresti paid Galindo.  (Id.)  Because he cannot reasonably anticipate whether he will be prosecuted under a bribe or gratuity theory of prosecution, which could

possibly subject him to double jeopardy, Farthing asks the Court to dismiss the Indictment.  (Id. at 5.)

The Government responds that the Court has already ruled in its Order on Uresti's motion to dismiss indictment (Dkt. # 46) that the Indictment is both constitutionally sufficient and properly states an offense.  (Dkt. # 55 at 3–7.) Nevertheless, as it did in Uresti's motion on the same issue (see Dkt. # 46 at 8), the Court first considers whether the Indictment is constitutionally sufficient, then whether the Indictment states an offense against Farthing.

A.     Sufficiency of the Indictment

Taking the allegations of the Indictment as true, the Court finds that the Indictment is constitutionally sufficient with respect to Count 1 because: (1) the Indictment contains the elements of the offense charged and sufficiently apprises Farthing so that he will not be misled while preparing his defense; and (2) Farthing is protected against another prosecution for the same offense.  See Bearden, 423 F.2d at 810.  The Indictment contains the elements of conspiracy to commit bribery under Sections 371 and 666 and sufficiently apprises Farthing of the charges against him such that he will not be misled while preparing his defense.

Section 371 makes it a federal crime for "two or more persons [to] conspire either to commit any offense against the United States . . . and one or more of such persons do any act to effect the object of the conspiracy."  18 U.S.C.

8

§ 371.  Further, Section 666 makes it a federal crime for an agent of an organization or of a state or local government or agency, which receives annual federal benefits in excess of $10,000, to "corruptly solicit[] or demand[] for the benefit of any person, or accept[] or agree[] to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more."  18 U.S.C. § 666(a)(1)(B).

Closely tracking the elements of conspiracy to commit bribery under both Sections 371 and 666, the Indictment clearly and methodically alleges: (1) that from January 1, 2005, to about September 30, 2016, Uresti and Farthing engaged in a conspiracy with Galindo to "corruptly solicit, demand, accept, and agree to accept a thing of value involving $5,000 or more intending to be influenced or rewarded in connection with a transaction or series of transactions of Reeves County, Texas, a local government entity which received more than $10,000 a year in Federal funding"; (2) the object of the conspiracy; (3) the manners and means used; and (4) several overt acts by Galindo, Farthing, and Uresti in furtherance of the alleged conspiracy.  (Dkt. # 3 ¶¶ 10–13.)  The overt acts alleged by the Indictment include: (1) an August 7, 2006 meeting during which Galindo, Farthing, and Uresti met to discuss the Facility contract and the arrangement to pay Uresti as a consultant; (2) Galindo presiding over the vote

awarding the Facility contract to Farthing on September 13, 2006; (3) Galindo

signing the Facility contract acting in his official capacity on September 13, 2006;

(4) Farthing sending Uresti a letter on September 20, 2006, agreeing to pay him

$10,000 per month for marketing services; (5) Farthing sending Uresti a check for

$10,000 on September 20, 2006; (6) Uresti forming TPS on January 4, 2007, which

was used to pay Galindo his share of payments from Farthing and Farthing's

company; and (7) various payments made among Farthing, Farthing's company,

Uresti, and Galindo between January 1, 2007, and September 30, 2016.  (See id.

¶¶ 13(a)–(q).)  In light of these detailed allegations, which closely track each and

every element of the offense of conspiracy to commit bribery under Sections 371

and 666, the Court is satisfied that Count 1 sufficiently apprises Farthing of the

charges against him such that he will not be misled while preparing his defense.

See Bearden, 423 F.2d at 810.

            Furthermore, Farthing is protected against another prosecution for the

same offense.  Count 1 of the Indictment makes clear the relevant conduct, parties,

time period, and transactions which, if proven beyond a reasonable doubt, would

constitute conspiracy to commit bribery under Sections 371 and 666.  These factual

details and close tracking of the relevant statutory language fully protect Farthing

from being tried again for the same offense.  See United States v. Gordon,

780 F.2d 1165, 1172 (5th Cir. 1986) (holding that factual details and language

10

closely tracking the language of a statute were sufficient to protect a defendant

from being tried again for the same offense). Furthermore, the Indictment's factual

allegations as to Count 1 sufficiently enable Farthing to raise a double jeopardy

defense in any subsequent prosecution for the same offense contained in Count 1.

See United States v. Giles, 756 F.2d 1085, 1087 (5th Cir. 1985) ("An indictment is

not impermissibly vague if it informs the defendant of the charge against her and

enables her to raise a double jeopardy defense in any future prosecution for the

same offense.").

Accordingly, the Court finds that Count 1 of the Indictment is

constitutionally sufficient because: (1) it contains the elements of the offense

charged and sufficiently apprises Farthing so that he will not be misled while

preparing his defense to Count 1, and (2) Farthing is protected against another

prosecution for the same offense. See Bearden, 423 F.2d at 810.

B.      Bribes and Gratuities Under 18 U.S.C. § 666(a)(1)(B)

Despite the constitutional sufficiency of the Indictment, Farthing

asserts, similar to Uresti (see Dkt. # 34 at 3), that the Indictment nonetheless fails

to state an offense as to Count 1 because it does not allege the date when the

alleged agreement occurred. (Dkt. # 52 at 3, 7.) Farthing argues that, in such case,

"the Government has the luxury of choosing whether to present this case as a bribe

prosecution or a gratuity prosecution, depending upon whether the evidence

adduced at trial is more supportive of an intent to exchange a thing of value for an

official act – a *quid pro quo* – or merely an intent to reward Galindo for a "'past

act that he has already taken.'"  (Id.)

        As explained by the Court in Uresti's order on the same issue (see

Dkt. # 46 at 14), the Supreme Court in United States v. Sun-Diamond Growers of

California, 526 U.S. 398 (1999), addressed the definition of both "bribery" and

"gratuity" in the context of the general illegal bribery and gratuity statutes,

18 U.S.C. § 201(b) ("Section 201(b)") and 18 U.S.C. § 201(c) ("Section 201(c)"),

respectively.  The Supreme Court held that bribery under Section 201(b) requires

"a showing that something of value was corruptly given, offered, or promised to a

public official (as to the giver) or corruptly demanded, sought, received, accepted,

or agreed to be received or accepted by a public official (as to the recipient) with

intent, *inter alia*, 'to influence any official act' (giver) or in return for 'being

influenced in the performance of any official act' (recipient)."  Sun-Diamond, 526

U.S. at 404 (quoting 18 U.S.C. § 201(b)).  By contrast, an illegal gratuity under

Section 201(c), "requires a showing that something of value was given, offered, or

promised to a public official (as to the giver), or demanded, sought, received,

accepted, or agreed to be received or accepted by a public official (as to the

recipient), 'for or because of any official act performed or to be performed by such

public official.'" Id. (quoting 18 U.S.C. § 201(c)).  As the Court went on to explain:

> The distinguishing feature of each crime is its intent element. Bribery requires intent "to influence" an official act or "to be influenced" in an official act, while illegal gratuity requires only that the gratuity be given or accepted "for or because of" an official act.  In other words, for bribery there must be a quid pro quo-a specific intent to give or receive something of value in exchange for an official act.  An illegal gratuity, on the other hand, may constitute merely a reward for some future act that the public official will take (and may already have determined to take), or for a past act that he has already taken.

Id. at 404–05.  Under the Supreme Court's explanation then, the distinction between bribery and gratuity is not one of mere timing as Farthing suggests, but rather one of intent—bribery requires a specific intent to give or receive something of value in exchange for an official act, and gratuity requires merely receiving a reward for some future act that the public official will take or for a past act that he has already taken.

There is a split among circuits as to whether Section 666 reaches both bribes and gratuities, with a majority holding that Section 666 reaches gratuities as well as bribes.  See United States v. Bonito, 57 F.3d 167, 171 (2d Cir. 1995) (holding that Section 666 reaches both bribes and illegal gratuities); United States v. Hawkins, 777 F.3d 880, 881 (7th Cir. 2015) (same); United States v. Zimmermann, 509 F.3d 920, 972 (8th Cir. 2007) (same); United States v. Jackson,

No. 16-10946, -- F. App'x --, 2017 WL 1969667, at *7–8 (11th Cir. May 12, 2017) (same); but see United States v. Fernandez, 722 F.3d 1, 19 (1st Cir. 2013) (holding that Section 666 does not reach gratuities).  While the Fifth Circuit has not directly addressed this issue, the plain language of Section 666 supports the majority view that Section 666 reaches both bribes and gratuities.

Section 666 makes it a federal crime for an agent of an organization or of a state or local government or agency, which receives annual federal benefits in excess of $10,000, to "corruptly solicit[] or demand[] for the benefit of any person, or accept[] or agree[] to accept, anything of value from any person, intending to be *influenced or rewarded* in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more."  18 U.S.C. § 666(a)(1)(B) (emphasis added).  The statute's use of the words "intending to be influenced or rewarded" appears to not only contemplate bribes, which require "intent . . . 'to be influenced' in an official act," see Sun-Diamond, 526 U.S. at 404, but also gratuities, which are "rewards for some future act that the public official will take (and may already have determined to take), or for a past act that he has already taken."  See id. at 406.  The "intending to be influenced or rewarded" language of Section 666 has been relied on by federal courts of appeals to hold that Section 666 reaches both bribes and

gratuities, a plain statutory reading that this Court finds persuasive.  See Bonito, 57
F.3d at 171; Jackson, 2017 WL 1969667, at *7.

   In any event, even if Count 1 of the Indictment under Section 666 did
not reach gratuities, the Indictment would still stand because the Indictment alleges
that Galindo took official action "[i]n exchange for the payments and promises of
future payments from Farthing and Farthing's company."  (Indict. ¶ 12(b).)
Accordingly, the Government has clearly and specifically alleged a *quid pro quo*
sufficient to satisfy the Supreme Court's definition of bribery.  See Sun-Diamond,
526 U.S. at 404.  Whether the Government can prove such a *quid pro quo* beyond a
reasonable doubt is a question for the jury to eventually determine.

   Additionally, contrary to Farthing's assertions, the actual timing of the
payments among Farthing, Farthing's company, Galindo, and Uresti does not
control; rather, the intent behind the payments controls.  See United States v.
Griffin, 154 F.3d 762, 764 (8th Cir. 1998) ("The core difference between a bribe
and a gratuity is not the time the illegal payment is made, but the quid pro quo, or
the agreement to exchange cash for official action."); United States v. Jennings,
160 F.3d 1006, 1014 (4th Cir. 1998) ("Because the distinguishing factor between a
bribe and an illegal gratuity is the intent behind the payment, the timing of the
payment in relation to the official act for which it is made is (in theory)
irrelevant.").  Therefore, even if Section 666 failed to reach gratuities, the

Indictment states an offense against Farthing for conspiracy to commit bribery because the Indictment sufficiently alleges a *quid pro quo*.  Accordingly, the Court will not dismiss the Indictment on this basis.

## II.   Conjunctive Pleading

Farthing next contends that the Indictment impermissibly charges the alleged criminal acts in the conjunctive, thereby depriving him of due process notice of the allegations against him and risking a non-unanimous verdict.  (Dkt. # 52 at 5.)  According to Farthing, Section 666 delineates four different *actus rei*: "solicits, demands for the benefit of any person, or accepts or agrees to accept," and that each of these fits into different conceptual groupings.  (Id. at 6 (citing 18 U.S.C. § 661(a)(1)(B).)  Farthing argues that, while pleading in the conjunctive is generally admissible, the statute here is an exception to the general rule because Section 666's manner and means of commission allow a conviction to rest on a non-unanimous verdict, which could ultimately violate his Sixth Amendment right to a unanimous jury trial.  (Id. at 5.)

The Fifth Circuit has held that "[i]t is well-established in this Circuit that a disjunctive statute may be pleaded conjunctively and proved disjunctively." United States v. Holley, 831 F.3d 322, 328 n.14 (5th Cir. 2016) (quoting United States v. Haymes, 610 F.2d 309, 310 (5th Cir. 1980)).  "The general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the

16

conjunctive, as [defendant's] indictment did, the verdict stands if the evidence is sufficient with respect to any one of the acts charged." Id.

The case that Farthing cites in support of his contention is inapposite. In United States v. Gipson, 553 F.2d 453 (5th Cir. 1977), the Fifth Circuit established that a defendant not only has a right to a unanimous verdict, but also has the right to unanimity in the theory of which actions constituted the crime charged. Gipson, 553 F.2d at 457. In Gipson, however, the trial judge improperly instructed the jurors that they could convict Gipson as long as each of them found that Gipson had committed one of the six enumerated actions prohibited by the statute. Id. at 458. The Court in Gipson explained that in cases where the trial judge does not misinstruct the jury, "absent competent evidence to the contrary, a court has no reason to assume that an inconsistent or compromise verdict is not unanimous, and therefore has no justification for inquiring into the logic behind the jury's verdict." Id. at 457 (internal citation omitted). Thus, the thrust of the issue in Gipson was the trial court's erroneous instruction to the jury that its decision need not be unanimous. See id. Contrary to Farthing's assertion, Gipson does not stand for the proposition that the Government may not proceed with alternative theories, only that a proper charge to the jury is required in such circumstances.

Furthermore, the Fifth Circuit has held that "[i]n the routine case, a general unanimity instruction will ensure that the jury is unanimous on the factual

basis for a conviction, even where an indictment alleges numerous factual bases for criminal liability." United States v. Creech, 408 F.3d 264, 268 (5th Cir. 2005) (quoting United States v. Holley, 942 F.2d 916, 925–26 (5th Cir. 1991)) (internal quotations omitted).  Additionally, the Fifth Circuit's pattern jury instruction for Unanimity of Theory is used in such cases to safeguard against a non-unanimous verdict.  See United States v. Mauskar, 557 F.3d 219, 226–27 (5th Cir. 2009). Accordingly, the Court will not dismiss the Indictment on this basis.

### III.   Statute of Limitations

Farthing next moves to dismiss Count 1, arguing that it is barred under the general five-year statute of limitations for Sections 371 and 666.  (Dkt. # 52 at 10.)  Farthing contends that all of the essential elements for Count 1 were completed on or before January 4, 2007, or more than ten years before the Indictment in this case.  (Id.)  Additionally, to the extent that the thing of value provided to Galindo was the total dollar value of his payments from Uresti, and not his employment as Uresti's consultant, Farthing argues that this does not change his statute of limitations argument.  (Id. at 11.)  Farthing asserts that the only overt acts alleged after January 4, 2007, concern his "successor company," but the Indictment does not allege that Farthing profited after that date.  (Id.)  According to Farthing, it is reasonable to conclude that Galindo and Uresti understood that Farthing had withdrawn from the conspiracy when checks made payable to Uresti

18

no longer came from Farthing's company.  (Id. at 12.)  For these reasons, Farthing

contends that any conduct prior to May 16, 2012, or five years before the

Indictment in this case, is barred by the statute of limitations.  (Id.)

The Government asserts that Farthing has misinterpreted the

Indictment because it clearly alleges that Farthing conspired to violate Section 666

from on or about January 1, 2005, and continuing through on or about September

30, 2016.  (Dkt. # 55 at 10.)  The Government contends that, contrary to Farthing's

assertion, the thing of value promised by Uresti to Galindo was not a "job," but

that Uresti's involvement was to be the conduit of payments to Galindo, which are

overt acts alleged to have occurred as late as April 8, 2014, or within the relevant

statute of limitations period.  (Id.)  As for Farthing's argument that he abandoned

or withdrew from the conspiracy, the Government asserts that this is a matter for

the jury in this case to determine.  (Id.)

Because conspiracy is a continuing offense, "a defendant who has

joined a conspiracy continues to violate the law through every moment of the

conspiracy's existence, and he becomes responsible for the acts of his co-

conspirators in pursuit of their common plot."  Smith v. United States, 568 U.S.

106, 111 (2013) (internal quotation marks and citations omitted).  A defendant's

membership in the ongoing unlawful scheme continues until he withdraws.  Id. at

107.  "Affirmative acts inconsistent with the object of the conspiracy and

communicated in a manner reasonably calculated to reach co-conspirators have been regarded as sufficient to establish withdrawal or abandonment." <u>United States v. U.S. Gypsum Co.</u>, 438 U.S. 422, 464–65 (1978).  "Passive nonparticipation in the continuing scheme is not enough to sever the meeting of minds that constitutes the conspiracy." <u>Smith</u>, 568 U.S. at 112–13.  The Supreme Court has determined that "[e]stablishing individual withdrawal [is] a burden that rest[s] firmly on the defendant regardless of when the purported withdrawal took place." <u>Id.</u> at 110–11.

Here, as the Government notes, the conspiracy in the Indictment is alleged to have occurred "on or about January 1, 2005, and continuing through on or about September 30, 2016," which is clearly within the applicable statute of limitations for Sections 371 and 666.  (<u>See</u> Dkt. # 3 at 3.)  Based on the evidence at trial, it will be for the jury to decide whether Farthing met his affirmative burden of demonstrating that he abandoned or withdrew from the conspiracy for the conduct alleged in the Indictment.  Thus, because the Indictment alleges overt acts occurring within the applicable statute of limitations for Sections 371 and 666, the Court will not dismiss Count 1 on this basis.

20

IV.  Count 2

Farthing also challenges the sufficiency of the Indictment as to Count 2, arguing that it lacks specificity, is constitutionally deficient, and has the same statute of limitations problems as Count 1.  Farthing also contends that Count 2 merges into Count 1 and must be dismissed on this basis.

A.  Sufficiency of the Indictment

The Court addressed the same argument in its Order on Uresti's motion to dismiss the indictment.  (See Dkt. # 46 at 11–13.)  As discussed, the Indictment contains the elements of conspiracy to launder monetary instruments and sufficiently apprises Farthing of the charges against him such that he will not be misled while preparing his defense to Count 2.

Under 18 U.S.C. § 1956 ("Section 1956"):

Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . knowing that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . . shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

21

18 U.S.C. § 1956(a)(1)(B)(i).  Section 1956 also provides that any person who

conspires to commit any Section 1956 offense is "subject to the same penalties as

those prescribed for the offense the commission of which was the object of the

conspiracy."  18 U.S.C. § 1956(h).

Closely tracking the statutory language and elements of Section 1956,

Count 2 of the Indictment alleges that:

> From on or about September 1, 2006, and continuing through
> on or about September 30, 2016, in the Western District of
> Texas and elsewhere, the Defendants, Carlos I. Uresti (1); and
> Vernon C. Farthing III (2); did knowingly combine, conspire,
> and agree with each other, Galindo, and with other persons
> known and unknown to the Grand Jury to knowingly conduct
> and attempt to conduct financial transactions affecting interstate
> commerce, which transactions involved the proceeds of a
> specified unlawful activity, that is, Bribery in violation of
> [18 U.S.C. § 666(a)(1)(B)], knowing that the transactions were
> designed in whole or in part to conceal and disguise the nature,
> location, source, ownership, and control of the proceeds of that
> specified unlawful activity, and that while conducting and
> attempting to conduct such financial transactions, knew that the
> property involved in the financial transactions represented the
> proceeds of some form of unlawful activity in violation of
> [18 U.S.C. § 1956(a)(1)(B)(i)].  All in violation of [18 U.S.C.
> § 1956(h)].

(Dkt. # 3 ¶ 15.)  Here, the Court again finds that the allegations closely track each

and every element of conspiracy to launder monetary instruments under Section

1956.  Accordingly, the Court is satisfied that Count 2 sufficiently apprises

22

Farthing of the charges against him such that he will not be misled while preparing his defense to Count 2.  See Bearden, 423 F.2d at 810.

Furthermore, Farthing is also protected against another prosecution for the same offense.  Count 2 incorporates by reference the detailed factual allegations, relevant conduct, parties, time period, and transactions of Count 1. (Dkt. # 3 ¶ 14.)  Thus, as with Count 1, the factual details and close tracking of the relevant statutory language in Count 2 fully protect Farthing from being tried again for the same offense.  See Gordon, 780 F.2d at 1172.  Furthermore, the Indictment's factual allegations as to Count 2 sufficiently enable Farthing to raise a double jeopardy defense in any subsequent prosecution for the same offense. See Giles, 756 F.2d at 1087.  Accordingly, the Court finds that Count 2 of the Indictment is constitutionally sufficient because: (1) it contains the elements of the offense charged and sufficiently apprises Farthing so that he will not be misled while preparing his defense to Count 2, and (2) Farthing is protected against another prosecution for the same offense.  See Bearden, 423 F.2d at 810.

Furthermore, for the same reasons that Count 1 is not barred by the applicable statute of limitations for that offense, Count 2 is not barred either.

B.     <u>Merger</u>

Finally, Farthing contends that the money laundering charge in Count 2 must be dismissed because it merges into the bribery charge alleged in Count 1.  (Dkt. # 52 at 12.)  Specifically, Farther argues that the money laundering charge alleged in Count 2 is barred by the "merger problem" identified in <u>United States v. Santos</u>, 553 U.S. 507 (2008).  (<u>Id.</u>)  According to Farthing, the Government attempts to allege that monies paid to Galindo constitute "proceeds" of the criminal activity, but they are actually the "expense" or "cost" of such activity, and therefore the money paid to Galindo is part of the conduct alleged in Count 1 for conspiracy to commit bribery.  (<u>Id.</u> at 13.)

In support, Farthing relies on <u>United States v. Santos</u>, where the Supreme Court considered whether the term "proceeds" in the federal money laundering statute, 18 U.S.C. § 1956(a)(1), meant "profits" or "receipts."  553 U.S. 507, 509 (2008).  In a 4-1-4 decision, the plurality held that the term was ambiguous and, applying the rule of lenity, held that "proceeds" meant "profits" and not total "receipts."  <u>Id.</u> at 511–12.  The plurality concluded, therefore, that "a criminal who enters into a transaction paying the expenses of his illegal activity

24

cannot possibly violate the money-laundering statute, because by definition profits consist of what remains after expenses are paid."[4]  Id. at 517.

        According to the Government, in this case, the Indictment alleges "concealment" money laundering under 18 U.S.C. § 1956(a)(1)(B)(i), and therefore Santos does not apply.  (Dkt. # 55 at 12–13.)  Alleged in this way, the Government argues that there is no concern that the money paid to Galindo was for any expense or cost of the crime alleged in Count 1 because all of the monies paid to Galindo through Uresti were profits and, therefore, ultimately proceeds of illegal activity.  (Id. at 13.)  The Government further argues that even if Santos applies, a bribe or gratuity as alleged here does not involve any expenses and thus there is no risk of any merger of the two counts.  (Id.)

        Here, as the Government contends, Farthing and Uresti are clearly alleged in Count 2 to commit *concealment* money laundering under 18 U.S.C. § 1956(a)(1)(B)(i), rather than *promotional* money laundering crimes under 18 U.S.C. § 1956(a)(1)(A)(i), as was of concern in Santos.  Under § 1956(a)(1)(A)(i), transactions involving proceeds of unlawful activity that "promote" criminal activity are illegal ("promotional money laundering").  In

---

[4] After the Supreme Court decided Santos, Congress amended the money-laundering statute to specifically define "proceeds" as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity."  Fraud Enforcement and Regulatory Act of 2009, Pub. L. No. 111–21, § 2(f)(1), 123 Stat. 1617, 1618 (2009) (codified at 18 U.S.C. § 1956(c)(9)).

contrast, § 1956(a)(1)(B)(i) prohibits "transactions designed to 'conceal or disguise' the origins or location of the proceeds of illegal activity, or to avoid legal reporting requirements" ("concealment money laundering"). Thus, promotional money laundering, which is *not* alleged in this case, is "different from traditional money laundering because the criminalized act is the reinvestment of illegal proceeds rather than the concealment of those proceeds." United States v. Jolivet, 224 F.3d 902, 909 (8th Cir. 2000).

Here, the Indictment clearly uses the term "proceeds" in the money laundering count, which tracks the statutory language of concealment money laundering found in § 1956(a)(1)(B)(i). And as already determined, the Indictment recites the essential elements of this offense and apprises Farthing of the charges against him. While it remains to be seen at trial what the evidence in the case will show, the Court will not dismiss the Indictment on the basis that Count 2 merges into Count 1. See United States v. Wilkes, 662 F.3d 524, 547 (9th Cir. 2011) (rejecting Santos challenge and affirming money laundering conviction where "the effort to disguise the source of the money was an additional act that is separately punishable"); United States v. Fernandez, 559 F.3d 303, 317 (5th Cir. 2009) (holding that use of receipts outside of the criminal enterprise necessarily means that those receipts are profits because the funds are not needed to run the operation); United States v. Bush, 626 F.3d 527, 535, 538 (9th Cir. 2010);

<u>United States v. Bohuchot</u>, No. 307-CR-167-L, 2008 WL 4849324, at *6 (N.D. Tex. Nov. 10, 2008).

CONCLUSION

Having found that the Indictment is constitutionally sufficient and states an offense against Farthing under both Counts 1 and 2, the Court **DENIES** Farthing's Motion to Dismiss Indictment (Dkt. # 52).

**IT IS SO ORDERED**.

**DATE:** San Antonio, Texas, August 3, 2018.

_____
David Alan Ezra
Senior United States Distict Judge