UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | CRIMINAL NO. SA-17-CR-380-DAE |
| § | |
| v. § | |
| § | |
| VERNON FARTHING, III (2); § | |
| § | |
| Defendant. § | |
| § | |

### RESPONSE IN OPPOSITION TO
### MOTION FOR BILL OF PARTICULARS

The United States of America, by and through the United States Attorney for the Western District of Texas, respectfully files this opposition to Defendant Vernon Farthing's Motion for Bill of Particulars (Rec. Doc. 73).

### INTRODUCTION

On May 16, 2017, a federal grand jury returned an Indictment charging the Defendant Vernon Farthing ("defendant" or "Farthing") and his co-defendant, Carlos Uresti ("Uresti") with: (1) Conspiracy to Commit Bribery, in violation of 18 U.S.C. §§ 371 and 666(a)(1)(B) ("Count 1"); and (2) Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h) ("Count 2").[1]  Both Farthing and Uresti filed Motions to Dismiss the Indictment[2] and both Motions were denied by the District Court.[3]  The District Court found the Indictment constitutionally sufficient in all respects.[4]

---

[1] *See* Indictment (Rec. Doc. 3).
[2] Rec. Docs. 34 (Uresti's Motion to Dismiss) and 52 (Farthing's Motion to Dismiss).
[3] Rec. Docs 46 (Court's Order denying Uresti's Motion to Dismiss) and 74 (Court's Order denying Farthing's Motion to Dismiss).
[4] Court's Order denying Farthing's Motion to Dismiss at 8 and 21 (Rec. Doc. 74).

1

Despite this, Farthing renews his attack on the Indictment; claiming yet again that the Indictment does not "guard against a constructive amendment at trial" and does not sufficiently protect "Farthing's Fifth and Sixth Amendment rights."[5] However, as the District Court recognized, the Indictment provides detailed allegations which closely track each and every element of the offenses charged.[6] As such, a Bill of Particulars is not warranted in this case.

## BACKGROUND

On August 10, 2005, defendant Vernon C. Farthing, III ("Farthing"), on behalf of his company that specializes in providing medical services to inmates, submitted a proposal to provide medical services to Reeves County Detention Center R-3 ("the Facility"). The proposal was made contingent on Reeves County being awarded a Federal Bureau of Prisons ("BOP") contract to house federal inmates in the Facility.[7]

During this time, the County Commissioners Court was presided over by cooperating defendant Jimmy Galindo ("Galindo"). After Reeves County was awarded the BOP contract, the Reeves County Commissioners Court voted on September 13, 2006, to award Farthing's company the contract to provide medical services at the Facility ("the R-3 Contract").[8] The R-3 Contract provided that Reeves County would pay Farthing's company a specified fee per inmate per day for healthcare services.[9]

---

[5] Farthing Motion for Bill of Particulars at 2-3.
[6] Court's Order denying Farthing's Motion to Dismiss at 10 and 22 (Rec. Doc. 74).
[7] Indictment ¶5.
[8] Indictment ¶¶7-8.
[9] Indictment ¶8.

The Indictment alleges that Farthing engaged in a conspiracy with Galindo and co-defendant Carlos Uresti ("Uresti") to corruptly influence or reward Galindo in connection with the R-3 Contract being awarded to Farthing's company.[10]

The purported scheme involved Galindo "accepting payments, promises of future payments, and other things of value from Farthing, through Farthing's company."[11] In exchange for these payments and promises of future payments, Galindo presided over the vote that awarded the R-3 Contract to Farthing's company and helped the company secure the contract on favorable terms.[12]

The Indictment further alleges that "Farthing, through Farthing's company, agreed to hire Uresti as a 'consultant' and pay [him] approximately $10,000 a month."[13] As a "consultant," the Indictment alleges that Uresti acted as a conduit for payments from Farthing and Farthing's company to Galindo, and then paid approximately half of the money he received from Farthing and Farthing's company to Galindo.[14]

Uresti used a company called Turning Point Strategies, LLC ("TPS") and his law firm's accounts to pay Galindo a share of the payments he received from Farthing and Farthing's company.[15] The charged purpose of this arrangement was to conceal the origin, nature, ownership, and control of the payments to Galindo from Farthing and Farthing's company, and to hide the conspiracy from taxpayers, citizens, and the Reeves County commissioners.[16]

The Indictment alleges that – about one month before Galindo presided over the vote to award the R-3 Contract – Galindo, Uresti, and Farthing met on August 7, 2006, to discuss the

---

[10] Indictment ¶10.
[11] Indictment ¶12(a).
[12] Indictment ¶12(b).
[13] Indictment ¶¶ 12(c),13(e).
[14] Indictment ¶12(d).
[15] Indictment ¶12(f).
[16] Indictment ¶12(e)-(f).

contract and the arrangement to pay Uresti as a consultant.[17] After the R-3 Contract was awarded to Farthing's company and signed by Galindo in his official capacity as Reeves County Judge, Farthing sent a check to Uresti for $10,000 as the initial payment to Uresti and Galindo.[18]

For a period of approximately ten years, from on or about September 20, 2006, until on or about September 30, 2016, Farthing's company, and its successor companies, paid Uresti monies pursuant to the agreement among Uresti, Farthing, and Galindo.[19] Further, from on or about January 1, 2007, until on or about September 30, 2016, Uresti paid Galindo approximately one-half of the payments he received from Farthing's company and its successor companies.[20] The Indictment list several specific payments from Farthing's company or successor companies to Uresti, a portion of which Uresti subsequently transferred to Galindo via wire transfers.[21]

Through Count 1 of the Indictment, Farthing and Uresti are charged with conspiring with each other and with Galindo to "corruptly solicit, demand, accept, and agree to accept a thing of value involving $5,000 or more intending to be **influenced or rewarded** in connection with a transaction and series of transactions of Reeves County, Texas . . ."[22] (emphasis added). Count 2 of the Indictment alleges a conspiracy between Farthing, Uresti, and Galindo to commit money laundering by engaging in financial transactions with the proceeds of Bribery "knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds" of bribery.[23] Count 2 does not require an overt act.

---

[17] Indictment ¶13(a).
[18] Indictment ¶13(e).
[19] Indictment ¶13(g)
[20] Indictment ¶13(h).
[21] Indictment ¶¶ 13(i)–(q)
[22] Indictment ¶10.
[23] Indictment ¶15.

## LAW AND ARGUMENT

"The purposes of a bill of particulars are to provide the defendant with sufficient notice of the charges against him so that he can prepare an adequate defense, to minimize surprise to the defendant at trial, and to enable the defendant to plead double jeopardy in the event of a subsequent prosecution." *United States v. Robinett*, No. 3:15-CR-559-D(6), 2018 WL 1640116, at *5 (N.D. Tex. Apr. 5, 2018).[24]  In determining whether a bill of particulars is necessary, the court examines "whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges against him to enable him to prepare for trial." *United States v. Martinez*, 2010 WL 2025226, at *7 (N.D. Tex. May 21, 2010 (citations omitted); *see also United States v. Gorel*, 622 F.2d 100, 104 (5th Cir. 1979) (affirming denial of motion for bill of particulars where defendant did not show that matters requested were necessary to inform him of the charge against him). Moreover, even if the indictment is insufficient, a bill of particulars is not necessary where the government has provided the necessary information in another satisfactory form, such as through discovery. *See United States v. Kirkham*, 129 Fed. Appx. 61, 72 (5th Cir. 2005) (concluding that "voluminous discovery" provided by government "obviated the need for a bill of particulars").

### A.  The Indictment is Legally Sufficient

The Defendant's Motion for a Bill of Particulars is entirely based upon a false premise—that the Indictment is constitutionally insufficient.  The Defendant claims that a Bill of Particulars is needed because the Indictment does not sufficiently inform of the charges he is facing.[25]  The Defendant even claims the insufficiency of the Indictment has been "established"

---

[24] *See also United States v. Carlock*, 806 F.2d 535, 550 (5th Cir. 1986); *United States v. Perez*, 489 F.2d 51, 70-71 (5th Cir. 1973).
[25] Farthing Motion for a Bill of Particulars at 7.

at a previous hearing.[26]  However, there has been a judicial ruling by the District Court which completely eviscerates the Defendant's stated need for a Bill of Particulars.  The District court has ruled on two occasions the Indictment is legally sufficient in that it contains the elements of the offense, sufficiently apprises the Defendant of the charges against him such that he will not be misled while preparing his defense, and protects the Defendant from another prosecution for the same offense.[27]  Thus the entire premise for the Defendant's Motion for a Bill of Particulars----that the Indictment is insufficient—has been already rejected by the District Court in this case.  The Defendant's contention that the Indictment does not adequately apprise of "what offense is charged"[28] is simply contrary to the District Court's ruling in this case.

As discussed above, the purpose of a bill of particulars is to provide sufficient notice so a defendant can "prepare an adequate defense, to minimize surprise to the defendant at trial, and to enable the defendant to plead double jeopardy in the event of a subsequent prosecution." *United States v. Robinett*, No. 3:15-CR-559-D(6), 2018 WL 1640116, at *5 (N.D. Tex. Apr. 5, 2018). In this case, the Indictment "clearly and methodically alleges: (1) that from January 1, 2005, to about September 30, 2016, Uresti and Farthing engaged in a conspiracy with Galindo to "corruptly solicit, demand, accept, and agree to accept a thing of value involving $5,000 or more intending to be influenced or rewarded in connection with a transaction or series of transactions of Reeves County, Texas, a local government entity which received more than

---

[25] Farthing's Motion for a Bill of Particulars at 3.
[26]  The Defendant claims that in a prior hearing, defense counsel "established that the grand jury testimony produced and the Indictment did not adequately apprize the Defendant of what act that the grand jury charged and, thus, what offense is charged; a gratuity, bribery or both."  Motion for a Bill of Particulars at 1.  This is simply false.  As this Court is aware, the prior hearing concerned providing the Defendant with additional Grand Jury materials, and no specific ruling was made at that hearing regarding the sufficiency of the Indictment.
[27] Court's Order denying Farthing's Motion to Dismiss at 8-10 and 22-24 (Rec. Doc. 74) and Court's Order denying Uresti's Motion to Dismiss at 8 (Rec. Doc. 46).
[28] Farthing's Motion to Dismiss at 1.

$10,000 a year in Federal funding"; (2) the object of the conspiracy; (3) the manners and means used; and (4) several overt acts by Galindo, Farthing, and Uresti in furtherance of the alleged conspiracy.[29]

The overt acts alleged by the Indictment include: (1) an August 7, 2006 meeting during which Galindo, Farthing, and Uresti met to discuss the Facility contract and the arrangement to pay Uresti as a consultant; (2) Galindo presiding over the vote awarding the Facility contract to Farthing on September 13, 2006; (3) Galindo signing the Facility contract acting in his official capacity on September 13, 2006; (4) Farthing sending Uresti a letter on September 20, 2006, agreeing to pay him $10,000 per month for marketing services; (5) Farthing sending Uresti a check for $10,000 on September 20, 2006; (6) Uresti forming TPS on January 4, 2007, which was used to pay Galindo his share of payments from Farthing and Farthing's company; and (7) various payments made among Farthing, Farthing's company, Uresti, and Galindo between January 1, 2007, and September 30, 2016.[30]

These details as set forth in this "speaking" Indictment certainly meets the requirements of the Fifth and Sixth Amendments. As noted by the District Court, Count 1 and Count 2 of the the Indictment "makes clear the relevant conduct, parties, time period, and transactions…"[31] The Indictment is legally sufficient, apprises the Defendant of the nature of the charges against him, and protects against prosecution for the same offense. As such, a Bill of Particulars is not warranted.

---

[29] Indictment at ¶¶ 10–13 (Rec. Doc. 3).
[30] *See* Id. ¶¶ 13(a)–(q).
[31] Court's Order denying Farthing's Motion to Dismiss at 8-10 and 22-24 (Rec. Doc. 74)

### B. The Defendant seeks a Detailed Exposition of the Government's Evidence

The Defendant is seeking to use the Bill of Particulars as a means of obtaining the United States' legal and evidentiary theories, which is impermissible under established case law. A bill of particulars cannot be used to "obtain a detailed disclosure of the government's evidence prior to trial[.]" *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978) (quoting *United States v. Perez*, 489 F.2d 51, 70-71 (5th Cir. 1973)); see also *United States v. Burgin,* 621 F.2d 1352, 1359 (5th Cir. 1980) (explaining that bill of particulars "is not designed to compel the government to detailed exposition of its evidence" (citation omitted)). "[I]t is well established that generalized discovery is not a permissible goal of a bill of particulars." *United States v. Davis*, 582 F.2d 947, 951 (5th Cir. 1978). An inquiry into the Government's legal or evidentiary theory as to the means by which the Defendant committed specific criminal acts is not a proper subject or purpose for a bill of particulars. *United States v. Hajecate, 683 F.2d 894 (5th Cir. 1982); United States v. Murray*, 527 F.2d 401, 411 (5th Cir. 1976); *United States v. Kahaner*, 203 F.Supp. 78 (S.D.N.Y. 1962), *aff'd*, 217 F.2d 459 (2d Cir.), *cert. denied*, 375 U.S. 836 (1963). "And if required to furnish particulars, the Government would be unduly confined in its theory of proof." *United States v. Flom*, 558 F.2d 1179, 1185-1186 (5th Cir. 1977).

The Defendant makes 52 separate request for information from the United States,[32] which seek the United States legal and evidentiary theories. These detailed request improperly seek a detailed exposition of the United States' case in this matter. However, a bill of particulars, unlike discovery, is not intended to provide a defendant with the fruits of the government's investigation. *United States v. Smith*, 776 F.2d 1104 (3d Cir. 1985); *see also United States v. Hester*, 917 F.2d 1083 (8th Cir. 1990) (bill of particulars not a proper tool for

---

[32] Motion for a Bill of Particulars at 3-7. Request #1 has 11 subparts.

discovery).  *See United States v. Armocida*, 515 F.2d 49, 54 (3d Cir. 1975) ("Appellant's request for the 'when, where and how' of any overt acts not alleged in the indictment was tantamount to a request for 'wholesale discovery of the Government's evidence,' which is not the purpose of a bill of particulars under Fed.R.Crim.P. 7(f)."). As the court stated in *United States v. Reed*, No. CR 15-100, 2017 WL 843082, at *10 (E.D. La. Mar. 3, 2017), "[i]f the indictment lacks sufficient detail to inform the defendant of the charges against him, the court may order a bill of particulars.  The bill of particulars, however, is not a discovery tool, it is not meant to provide the defendant with evidentiary detail, and it is not intended to freeze the Government's evidence." (internal citations omitted).

 The United States has already provided significant discovery in this case including interviews of witnesses, cooperators, recorded interview of the cooperating defendant (Galindo), records from PNA and its successor companies, records from GEO, the BOP, Reeves County, and other entities, bank records, and numerous other items of discovery.  The United States has produced early *Jenks* information and email communications between the various conspirators and others.  Discovery in this case has been voluminous, thorough and ongoing.  This voluminous discovery, coupled with the detailed speaking Indictment, inform the Defendant of the nature of the case.  This Indictment has been determined to be sufficient therefore the defendant's request can only be efforts to obtain discovery or confine the Government's evidence.  The Defendant should not be permitted to use these 52 specific request as a "discovery tool," and the Motion should be denied.

## CONCLUSION

The burden is on the Defendant to show a particularized need for a Bill of Particulars. The Indictment in this case is detailed and lengthy. The Government has supplemented with voluminous and thorough discovery in this case. It is understandable why the Defendant would want a detailed exposition of the Government's case or try to confine the Government in its presentation of evidence. However, these are not the proper purposes of a Bill of Particulars.

The Defendant's claims a Bill of Particulars is needed because that the Indictment is insufficient to apprise him of the charges against him and protect against Double Jeopardy. However, the District Court has already reviewed and decided this issue—finding the Indictment is constitutionally sufficient. As such, the entire basis for the Defendant's request for a Bill of Particulars has already been rejected by the District Court. For these reasons, the Defendant's Motion for a Bill of Particulars should be denied.

JOHN F. BASH
UNITED STATES ATTORNEY

BY:    /s/Joseph E. Blackwell
      JOSEPH E. BLACKWELL
      Assistant U.S. Attorney
      Texas Bar # 24045504
      601 NW Loop 410, Suite 600
      San Antonio, Texas 78216
      (210) 384-7350
      Joseph.Blackwell@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on August 13, 2018, a copy of the foregoing Government's Opposition to Motion for Bill of Particualrs was sent to all counsel of record via ECF.

        BY:    /s/Joseph E. Blackwell
              JOSEPH E. BLACKWELL
              Assistant U.S. Attorney