UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NO. SA-17-CR-380-DAE |
| | § | |
| VERNON FARTHING, III (2); | § | |
| | § | |
|    Defendant. | § | |

**RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR BRADY EVIDENCE**

     The United States of America, by and through the United States Attorney for the Western District of Texas, respectfully opposes Defendant Vernon Farthing's ("defendant" or "Farthing") Motion for Brady Evidence (Dkt. # 113)[1] for the reasons set forth below:

**INTRODUCTION**

     The defendant's self-styled *Brady* Motion is actually another Motion for a Bill of Particulars. *Brady v. Maryland*, 373 U.S. 83, 87 (1963) concerns the Government's suppression of evidence favorable to the accused. Through his Motion, the defendant requests, among other things, the United States' legal and strategic analysis of various witnesses, exposition of trial strategy, detailed financial analysis, or records in the hands of third parties. In several requests, the defendant promulgates upon the United States the equivalent of civil discovery interrogatories. Throughout the Motion and two following supplements, the defendant provides no basis, legal

---

[1]    The defendant has filed a first supplemental request (Dkt. # 119) and a second supplemental request (Dkt. # 123).

1

analysis, or argument that any evidence has been suppressed by the United States or is unavailable to the defendant himself in the exercise of due diligence.

## BACKGROUND

This instant case was indicted on May 16, 2017. (Dkt. # 3). Trial was originally set in this matter for July 24, 2017. (Dkt. # 28). On July 6, 2017, this Court granted a Motion for Continuance and continued this trial date until May 7, 2018. (Dkt. # 41). On March 16, 2018, this Court granted a second Motion for Continuance in this case and continued the trial date until the current trial date of October 22, 2018. (Dkt. # 61).

Throughout the course of this litigation, the United States has produced a significant amount of discovery to both defendants. The United States has produced Jencks Act materials early and has continued to supplement its productions as new interviews are completed. The United States has produced all investigatory reports prepared in this matter, all documents obtained from Reeves County in this matter, all documents obtained from GEO in this matter, all documents obtained from BOP in this matter, all documents (including emails) obtained from cooperating defendant Jimmy Galindo, and all documents provided by other witnesses in this matter. Further, at times, the defendants have made specific request of certain documents or expressed questions regarding documents and the United States, in good faith, have endeavored to fulfill those request if possible and respond accordingly.

Despite this plethora of discovery and a detailed "speaking" Indictment, defendant Farthing has attempted, through legal pleadings, to force the United States to produce its legal theories or other non-discoverable information. For example, on February 23, 2018, defendant Farthing filed a Motion to Disclose Grand Jury Proceedings in which the defendant sought not just grand jury testimony (which had already been provided), but also the colloquy between the government

counsel and the grand jury. (*See*, Dkt. # 50).  Magistrate Judge Bemporad denied this motion. (Dkt. # 69).  Defendant Farthing tried again to obtain the government's legal theories, strategies, or non-discoverable information through a Motion to Dismiss the Indictment, (Dkt. # 52), and Motion for Bill of Particulars, (Dkt. # 73).  The Motion to Dismiss the Indictment was denied by this Court. (Dkt. # 74).  The Motion for Bill of Particulars was denied by Judge Bemporad.  (Dkt. # 83).

On October 9, 2018, defendant Farthing continued his quest for a specific roadmap of the United States' case theories and strategies by filing what it called a "Motion for Brady Evidence." (Dkt. # 113).  Defendant Farthing's Motion seeks 25 items[2], which the defendant summarily states are "*Brady* items."  (*Id*. at 1).  On October 10, 2018, defendant Farthing filed two "Supplements" to their request; seeking an additional nine (9) requests.  (Dkt. # 119 & 123).  Notably missing from the defendant's Motion and Supplements are any analysis, explanation, or reasoning as to how the 34 requested items constitute "*Brady* items."

## LAW AND ARGUMENT

*Brady* material is any information in the possession of the government that relates to guilt or punishment and that tends to help the defense by either bolstering the defense case or impeaching potential prosecution witnesses.  *Brady v. Maryland,* 373 U.S. 83, 87 (1963).  This can include *Giglio* evidence that would materially impeach a government witness, e.g., by showing bias or interest.  *See Giglio v. United States,* 405 U.S. 150, 154 (1972); *United States v. Bagley*, 473 U.S. 667, 676 (1985). The government generally has no obligation to turn over any exculpatory material of which the defense is already aware.  *See United States v. Fatty*, No. CR

---

[2]   There are 15 enumerated requests with approximately 10 additional distinct subparts.

17-161, 2018 WL 3708660, at *4–5 (E.D. La. Aug. 3, 2018); *Lovitt v. True*, 403 F.3d 171, 185 (4th Cir. 2005) ("*Brady* only applies when evidence is known to the prosecution but unknown to the defense.") (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976) ). Furthermore, the government has no obligation if the information is available to the defendant through the exercise of diligence. *See United States v. Willis*, 277 F.3d 1026, 1034 (8th Cir. 2002); *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997) ("State has no obligation to point the defense toward potentially exculpatory evidence when that evidence is either in the possession of the defendant or can be discovered by exercising due diligence."). The Fifth Circuit has stated, "*Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation." *United States v. Beasley*, 576 F.2d 626, 630 (5th Cir. 1978) (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976)).

To establish a Brady violation, a defendant must prove that (1) the prosecution actually suppressed the evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material. *Brady*, 373 U.S. at 87; *Reed v. Stephens*, 739 F.3d 753, 781 (5th Cir. 2014). "A petitioner's *Brady* claim fails if the suppressed evidence was discoverable through reasonable due diligence." *Reed*, 739 F.3d at 781. Suppressed evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. (citing *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Notably *Brady* imposes an obligation on the defendant to exercise "due diligence" and that the materials be in the possession of the government.

Federal Rule of Criminal Procedure 16(a) sets forth the documents required to be produced in discovery including:

1.  Any relevant written or recorded statements made by the Defendant as described in Rule 16(a)(1)(B);

2.  The substance of any relevant oral statement made by the Defendant before or after the Defendant's arrest, in response to interrogation by a person the Defendant knew to be a Government agent, that the Government intends to use at trial;

3.  The Defendant's arrest and conviction record;

4.  Books, papers, documents, data, photographs, tangible objects, buildings or places that are material to preparation of the defense, that the Government intends to use as evidence at trial to prove its case-in-chief, or that were taken from or belong to the Defendant;

5.  Results or reports of any physical or mental examination, and of any scientific test or experiment, that is material to preparation of the defense or intended for use by the Government as evidence in its case-in-chief at trial; and

6.  A written summary of any testimony that the Government intends to use under Federal Rules of Evidence 702, 703, or 705 during its case-in-chief at trial, describing the witness's opinions, the bases and reasons for them, and the witness's qualifications.[3]

Rule 16(as)(2) also provides that certain information is not subject to disclosure:

Information Not Subject to Disclosure. Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

In addition to Rule 16 disclosures, this Court in its Order Concerning Discovery and Pretrial Motions, (Dkt. # 27) has already ordered the production of *Brady* materials to include:

(a).  Any evidence tending to show threats, promises, payments, or inducements made by the Government, or any Government agent, that would bear upon the credibility of any Government witness;

---

[3] *See also* This Court's Order Concerning Discovery and Pretrial Motions. (Dkt. # 27).

5

(b).     Any statement of any Government witness that may be inconsistent with the witness's expected testimony at a hearing or trial;

(c).     Any information that is inconsistent with any element of any offense charged against the Defendant or that tends to establish a recognized affirmative defense;

(d).     Any prior conviction of any Government witness, if (1) the crime was punishable by death or imprisonment in excess of one year, or (2) the crime involved dishonesty or false statement, regardless of punishment;

(e.).    Any pending criminal charges against, or pending investigation of, any government witness; and

(f).     Any specific instances of conduct by any Government witness tending to show the witness's character for untruthfulness.

The United States is well aware of its *Brady* obligations and has, and will, continue to comply. The United States has taken great pains to comply with its discovery obligations including supplementing when needed. As noted above, the United States has gone above its obligations including early production of discovery, producing the discovery in electronic format, producing Jencks Act materials early, supplementing discovery as quickly as possible, and identifying for defense counsel the few occasions when problems have arisen. In short, the United States firmly believes in producing *Brady* information as an important part of a fair trial and has and will continue to abide by this principle.

The defendant's Motion is, in essence, a motion for bill of particulars or a motion to compel pre-trial discovery. Some of the items requested have already been produced by the United States. Many of the items seek United States' legal strategy or communication among counsel for the United States. Many of the items seek information not within the possession of the United States and in which the defendant, exercising due diligence, could acquire. None of the requests actually

6

relate to *Brady* information, nor any showing that the United States has failed in any manner in its discovery obligation. The United States will address each request in turn.

**Defendant's Requests #1 & #2**

1. The name and address of any witnesses the government has interviewed and will not call as a witness during trial.

2. The reason the government is not calling any witness listed under specific *Brady* request number 1.

**United States' Response:**

Obviously, trial has not commenced in this matter. Therefore, the witnesses the Government will "not call" remains to be determined. However, the United States has already produced the reports of interviews of all witnesses conducted by federal agents in this case. As new interviews are done, those reports are furnished to the defendant as well.

By way of background, once an interview has been conducted, a federal agent prepares a report of that interview. Although styled as a "Motion for Brady Evidence," the defendant is using this request as a bill of particulars to determine the United States' trial strategy. A bill of particulars cannot be used to "obtain a detailed disclosure of the government's evidence prior to trial[.]" *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978) (quoting *United States v. Perez*, 489 F.2d 51, 70-71 (5th Cir. 1973)); see also *United States v. Burgin,* 621 F.2d 1352, 1359 (5th Cir. 1980) (explaining that bill of particulars "is not designed to compel the government to detailed exposition of its evidence" (citation omitted)). "[I]t is well established that generalized discovery is not a permissible goal of a bill of particulars." *United States v. Davis*, 582 F.2d 947, 951 (5th Cir. 1978). An inquiry into the Government's legal or evidentiary theory as to the means by which the Defendant committed specific criminal acts is not a proper subject or purpose for a bill of

7

particulars.  *United States v. Hajecate,* 683 F.2d 894 (5th Cir. 1982); *United States v. Murray*, 527 F.2d 401, 411 (5th Cir. 1976); *United States v. Kahaner*, 203 F.Supp. 78 (S.D.N.Y. 1962), *aff'd*, 217 F.2d 459 (2d Cir.), *cert. denied*, 375 U.S. 836 (1963).  "And if required to furnish particulars, the Government would be unduly confined in its theory of proof." *United States v. Flom*, 558 F.2d 1179, 1185-1186 (5th Cir. 1977).

As noted above, the United States has provided the defendant with early Jencks Act production including the reports of interviews of witnesses in this case.  The defendant has failed to make any showing that he is entitled to an exposition on the United States' pretrial decision to call or not to call any witness in this matter.  Further, detailed trial strategy or exposition is not "suppressed evidence" and thus not *Brady* materials.

## Defendant's Request #3

3.	The reason the government is not calling Diana Ragland as a witness.

## United States' Response:

The United States assumes the defendant is referring to Ms. Diana Leslie who was interviewed by federal agents on or about September 18, 2018.  The United States has already provided defendant with the report detailing the Ms. Leslie's interview and the corresponding notes of that interview from the participating federal agents.  As noted above, the United States has not yet called or not called any witnesses in this matter.  However, a request seeking the United States "reason" for trial decisions is an obvious attempt to discovery the United States' trial strategy and legal reasoning.  The defendant has not shown and cannot make a valid argument as to why he would be entitled to the United States internal trial decisions on which witnesses to call.  Detailed trial strategy or exposition of reasons behind calling or not calling a particular witness is not "suppressed evidence" and thus not *Brady* materials.

**Defendant's Request #4**

4.      All reasons given by Jedidiah Smith for the twenty-cent increase in the per diem per inmate for the CAR 5 R-3 contract.

**United States' Response:**

The United States has already provided the defendant with the reports of Mr. Smith's interview and the notes of the federal agents participating in those interviews. The United States has also turned over documents provided by Mr. Smith via email to defense counsel. Further, according to Mr. Smith, an investigator for defendant Farthing has personally interviewed Mr. Smith and has subpoenaed him to appear as a defense witness at trial. The defendant has the same access to Mr. Smith as the United States.

**Defendant's Request #5**

5.      The unredacted records and information related to the Reeves County Detention Center compounds and the awarding of contracts under CAR 5 R-3 and CAR 6 R-1 & R-2. *See* Exhibit 1, Open Records request and redacted response to same.

**United States' Response:**

The United States has already produced all documents in its possession received from the successor company to PNA (Correct Care Solutions "CCS"), Reeves County, Texas, the GEO Group, and the Bureau of Prisons related to this instant matter. In its Motion, the defendant attached Exhibit 1, which appears to be a redacted "Reeves County Detention Complex (R3) Staffing Plan." It is uncertain where the defendant obtained this document. Further, pages 1-4 of Exhibit 1 appear to be duplicates of pages 4-8. Nevertheless, the United States has, on multiple occasions, provided an unredacted version of this particular document to defense counsel. By way

of convenience, the United States refers defendant Farthing to the United State's production of GEO records, specifically those Bates labed GEO_00180316- GEO_00180319.

## Defendant's Request #6

6.     Any favorable statements made by witnesses about Physician Network Association.

## United States' Response:

As noted above, the United States has already provided the defendant with all Jencks Act materials and all reports of interviews of witnesses conducted in connection with this matter within its possession.  The request does not qualify who would have made the statement, the form of the statement, or a time-period.

## Defendant's Request #7

7.     Communication from Physician Network Association to GEO Group and Reeves County that R-1 and R-2 need to be brought up to par to comply with Federal Bureau of Prison's guidelines or other adopted governmental guidelines.

## United States' Response:

Physician Network Association (now Correct Care Solutions), the GEO Group and Reeves County, Texas are all independent entities.  The United States has received documents from all three entities and has provided all such documents to the defendant.

## Defendant's Request #8

8.  The location of Carlos Uresti's office in the Reeves County Courthouse.

   a.  The date that Uresti's Reeves County Courthouse office opened.

## United States' Response:

This request appears to be an interrogatory. Moreover, the United States is unaware of whether Carlos Uresti currently has an office within the Reeves County Courthouse. The defendant makes no argument or showing as to why the United States can or should procure this information for the defendant. The defendant is in the same or better position (can solicit this information from co-defendant Carlos Uresti) than the United States to procure this information.

### Defendant's Request #9

9. Carlos Uresti's financial documents including:

    a. The dollar amount of income Uresti made as a Texas State Senator.

    b. The dollar amount of income made by Uresti at his consulting company.

    c. The dollar amount of income Uresti made as a lawyer.

    d. Statements from Uresti's law firm's operating account.

    e. Statement from Uresti's law firm's IOLTA account.

### United States' Response:

The United States has already produced all financial records in its possession pertaining to co-defendant Carlos Uresti.

### Defendant's Request #10

10. The title of Jimmy Galindo's position in the Texas Senate.

    a. The start and end date of Galindo's position in the Texas Senate.

    b. The dollar amount of Jimmy Galindo's salary in the Texas Senate.

    c. Any employment benefits that Jimmy Galindo received as a result of his position in the Texas Senate.

    d. The location of Jimmy Galindo's Austin office.

  e.  The date Jimmy Galindo's Austin office opened.

**United States' Response:**

The United States has already produced all financial records and reports of interview pertaining to cooperating defendant Jimmy Galindo within its possession. There has been no suppression of evidence and therefore, *Brady* is not implicated. The defendant seemingly is seeking factual representations from the United States, which is not proper under Rule 16 or *Brady*.

**Defendant's Request #11**

11. Any and all formation documentation for Municipal Market Strategies.

**United States' Response:**

The United States has already produced all records in its possession pertaining to Municipal Market Strategies.

**Defendant's Request #12**

12. All emails from Jimmy Galindo's three email accounts [Jimmy.galindo@senate.state.tx.us; jimmybgalindo@yahoo.com; galindoemail1@gmail.com] from 2005 until 2016.

**United States' Response:**

The United States has already produced all emails from the three email accounts requested that are within its possession. The United States does not possess the entirety of the email addresses Jimmy.galindo@senate.state.tx.us and jimmybgalindo@yahoo.com but has produced those emails within its possession. The email address of galindoemail1@gmail.com has been produced in its entirety.

**Defendant's Request #13**

13. Documents and statements from the Bureau of Prisons indicating that Physician Network Association had the highest quality medical care and the lowest cost

**United States' Response:**

The United States has produced all documents within its possession from the Bureau of Prisons relating to Physician Network Association.

**Defendant's Request #14**

14.     Any report that indicates that Physician Network Association had the highest quality medical care and the lowest cost.

**United States' Response:**

This request is unclear.  Defendant seemingly requests any reports from any person or entity during any time.  Further, there have been numerous reports detailing the poor medical care provided by PNA to inmates under the leadership of the defendant.  The United States has produced all records relating to this case in its possession obtained from the successor of PNA (CCS), BOP, Reeves County, and Galindo.  The United States has also produced documents related to the death of Jesus Galindo and resulting civil litigation.  Beyond what has been produced, the United States is unaware of any report within its possession indicating, "Physician Network Association had the highest quality medical care and the lowest cost."  There has been no suppression of evidence and thus *Brady* is not implicated.

**Defendant's Request #15**

15.     Any and all communications between the prosecution team and the lawyer that wrote the Bureau of Prisons' motion to dismiss in *Graciela Galindo*, *et al., v. Reeves County, Texas, et al.*, 3:10-cv-454-DB-NJG [Dkt. 113].

**United States' Response:**

The pleading referenced in this request made as part of the civil litigation surrounding the death of Jesus Galindo.  The referenced pleading was signed by Assistant United States

13

Attorneys Eduardo Castillo and Lisa Leontiev. Internal communications between Assistant United States Attorneys are not subject to discovery under Rule 16 of the Federal Rules of Criminal Procedure. The defendant has failed to make any showing or even argument as to a legal basis to support this request or its relevance.

**Defendant's Supplemental Request #1**

1. The overhead of Uresti's law firm from January 1, 2005 until September 30, 2016, including:

   a. The amount of rent Uresti paid for his office space from January 1, 2005 until September 30, 2016.

   b. The number of employees that worked at the Uresti law firm from January 1, 2005 until September 30, 2016.

   c. How much each of the employees at the Uresti law firm were paid from January 1, 2005 until September 30, 2016.

   d. How much Uresti paid for monthly expenditures such as internet, electricity, phone, and legal research fees from January 1, 2005 until September 30, 2016.

   e. Any monthly accounting statements for the Uresti law firm from January 1, 2005 until September 30, 2016.

**United States' Response:**

The United States has already produced all financial records in its possession pertaining to co-defendant Carlos Uresti.

**Defendant's Supplemental Request #2-1**

1. A readable copy of the Quickbooks program the government produced to Mr. Farthing.

**United States' Response:**

The United States obtained Quickbooks files from the former outside accountant for PNA. The United States produced those files in the same form and format for which it was provided to the United States. Further, the United States informed the defendant where those files originated (i.e. the former outside accountant of PNA). There has been no suppression of evidence as the files were produced in the same manner and format for which they were received by the United States and the source of those files have been identified to the defendant. Upon information and belief, the former outside accountant for PNA is the current personal accountant for the defendant.

### Defendant's Supplemental Request #2-2

2. The amount of money Jimmy Galindo made from 2003 until 2018.

    a. The amount of taxes Jimmy Galindo avoided paying from 2003 until 2018.

### United States' Response:

All bank records of Galindo within the possession of the United States has been produced. The United States is producing additional tax records in discovery that will list income reported to the IRS for 2008 until 2017. The analysis of taxes owed was conducted from 2004 until 2013 and is referenced in the Galindo plea agreement as approximately $292,979. There has been no analysis of taxes owed, if any, beyond 2013.

### Defendant's Supplemental Request #2-3

3. The GEO Group's SEC filings from 2005 until 2018.

### United States' Response:

The United States has produced to the defendant all records obtained by GEO pertaining to this case. It is believed that SEC filings are public records and can be obtained at www.sec.gov.

**CONCLUSION**

A *Brady* violation requires the suppression of evidence. It does not require evidence gathering or analysis on behalf of the United States. The defendant's Motion is yet another attempt to discover the United States legal theories and to expand discovery beyond the parameters of Rule 16 of the Federal Rules of Criminal Procedure and this Court's orders. As noted above, most of the request are moot because the United States has already provided all documents responsive to that request within its possession. There is no requirement under *Brady* that the United States seek out additional evidence which is also available to the defendant or make affirmative representations about trial witness decisions. For these reasons, this Motion should be denied in its totality.

WHEREFORE, for the foregoing reasons, the United States respectfully requests that this honorable Court deny defendant Farthing's Motion for Brady Evidence.

**JOHN F. BASH**
UNITED STATES ATTORNEY

BY:  /s/*Joseph E. Blackwell*
JOSEPH E. BLACKWELL
Assistant U.S. Attorney
Texas Bar # 24045504
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7350
Joseph.Blackwell@usdoj.gov

*/s/ Sean B. O'Connell*
SEAN O'CONNELL
Assistant U.S. Attorney
Pennsylvania Bar No. 94331
601 N.W. Loop 410, Suite 600
San Antonio, TX 78216-5597
Tel. (210) 384-7396
Fax (210) 384-7312
Sean.O'Connell@usdoj.gov

16

CERTIFICATE OF SERVICE

      I hereby certify that on October 11, 2018, a copy of the foregoing Government's Response in Opposition to Defendant Farthing's Motion for Brady evidence was served to all parties via ECF.

                          BY: /s/*Joseph E. Blackwell*
                                  JOSEPH E. BLACKWELL
                                  Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | **CRIMINAL NO. SA-17-CR-380-DAE** |
| **VERNON FARTHING, III (2);** | § § § | |
| **Defendant.** | § § | |

## ORDER

On this date, the Court having duly considered Defendant's Motion for Brady Evidence, United States' Response thereto, and all other relevant filings, and the Court hereby **DENIES** Defendant's Motion;

IT IS SO ORDERED.

Signed and entered this _____ day of _____, 2018.

_____

**HON. DAVID A. EZRA**
UNITED STATES DISTRICT JUDGE